# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 8, 2011          Decided July 29, 2011

No. 10-7041

ZUCKERMAN SPAEDER, LLP,
APPELLEE

v.

JAMES A. AUFFENBERG, JR.,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-00906)

---

*David A. Holzworth* argued the cause for appellant. With him on the briefs was *Thomas A. Duckenfield, III.*

*Francis D. Carter* argued the cause for appellee. With him on the brief was *Douglas R. Miller.*

Before: GINSBURG and GARLAND, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: Zuckerman Spaeder, LLP filed this lawsuit against James Auffenberg, Jr. for recovery

of unpaid attorneys' fees. Auffenberg counterclaimed for malpractice and later petitioned for arbitration before the District of Columbia Attorney/Client Arbitration Board (ACAB), an arm of the District of Columbia Bar. He also moved the district court for a stay pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 3, the denial of which he now appeals. We affirm the order.

## I. Background

Zuckerman Spaeder represented Auffenberg in a criminal tax fraud case tried in the District Court for the United States Virgin Islands. After he had been acquitted Auffenberg refused to pay Zuckerman's last two bills, or approximately $834,000.

Zuckerman sued Auffenberg in the District of Columbia Superior Court to recover the fees plus interest. Auffenberg removed the case to federal court, answered the complaint, and counterclaimed for legal malpractice. In the counterclaim he alleged Zuckerman had agreed to cap its fees at $1.5 million, and the $834,000 it had charged beyond that was unreasonable and actionable under Rule 1.5 of the District of Columbia Rules of Professional Conduct.

One month later Auffenberg moved for leave to amend his counterclaims to include allegations Zuckerman had violated its duties under Rule 1.6 by discussing the dispute with third parties, including former co-counsel and a reporter for the Blog of the Legal Times. Auffenberg also asked for a protective order to prevent Zuckerman from communicating with third parties absent Auffenberg's prior consent.

Zuckerman then filed an amended complaint seeking relief *quantum meruit*. Auffenberg in turn amended his

answer and counterclaim, again alleging violations of both Rule 1.5 and Rule 1.6. Zuckerman moved for various reasons to strike or in the alternative to dismiss the amended counterclaims. A hearing before the district court was scheduled for October 28, 2009.

Two weeks before the scheduled hearing the parties filed a joint statement pursuant to the district court's standing order that litigants meet to discuss the possibility of settlement and the usefulness if any of alternative dispute resolution. Although they acknowledged "the prospects of settlement are unclear at this time" and the usefulness of mediation "uncertain," they requested a "rather early mediation session" before a Magistrate Judge. They also submitted a proposed schedule culminating in a trial to take place in January 2011.

At the October 28 hearing, the district court agreed to refer the case to mediation for two months only. The court also directed the parties to negotiate a protective order allowing Zuckerman to contact its former co-counsel, denied without prejudice Zuckerman's motion to dismiss, and ordered Auffenberg within two weeks to amend his counterclaims so as to cure any defects.

The parties appeared before a Magistrate Judge for a single day of mediation in December 2009. Little came of the talks other than the magistrate's suggestion the parties submit their claims to binding arbitration before either a Magistrate Judge or the ACAB. Although a client may invoke mandatory arbitration of any fee dispute under D.C. Bar Rule XIII, both attorney and client must agree to arbitrate a malpractice claim before the ACAB.

Auffenberg claims to have engaged in a "long back and forth" with Zuckerman in the hope of obtaining the firm's

consent to arbitration before the ACAB. In any event, on January 29, 2010, he filed a unilateral petition with the ACAB and that same day moved the district court for a stay of the proceedings. His petition to the ACAB covered both the fee dispute and his malpractice claims.

The district court denied Auffenberg's request for a stay on the ground that he had waived his right to seek arbitration of the dispute. The court concluded Auffenberg, by petitioning the ACAB, was trying to "get a second bite" at alternative dispute resolution after mediation had failed. Even if Auffenberg had not engaged substantially with Zuckerman on the merits, he had answered the complaint and moved the case from state to federal court, and from the court to mediation, all before filing his petition or even indicating he intended to arbitrate his claims before the ACAB. His "participation" in the courts and in mediation precluded Auffenberg from obtaining a stay to try his luck in yet another forum, that is, the ACAB.

Auffenberg immediately appealed the district court's order pursuant to § 16 of the FAA, 9 U.S.C. 16(a)(1)(A) ("An appeal may be taken from ... an order ... refusing a stay of any action under section 3 of this title"); *see Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1900 (2009).

## II.   Analysis

Under the FAA a litigant is entitled to a stay pending arbitration so long as the suit in which he is a party is "referable to arbitration" under a valid agreement and he "is not in default in proceeding with such arbitration." 9 U.S.C. § 3. We have held a party who has actively participated in litigation or otherwise acted in a manner inconsistent with an intent to arbitrate is "necessarily 'in default,'" within the

meaning of this provision. *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966).

On appeal, Zuckerman does not dispute the claims in this case are "referable to arbitration" before the ACAB, nor do the parties disagree about the relevant history of this litigation.[*] Therefore, the only issue before us is whether Auffenberg is "in default" of his right to arbitrate, a question of law we address de novo. *Khan v. Parsons Global Servs. Ltd.*, 521 F.3d 421, 425 (D.C. Cir. 2008).

In our caselaw, from *Cornell & Co.* in 1966 through *Khan* in 2008, we have always referred to the question of default exclusively in terms of waiver. 360 F.3d at 513; 521 F.3d at 425. Waiver refers to a party's "intentional relinquishment or abandonment of a known right," *United States v. Olano*, 507 U.S. 725, 733 (1993). In our prior cases, therefore, we have examined the record to determine whether the party seeking a stay has acted in a manner "inconsistent with any intent to assert its right to arbitrate." *Nat'l Cancer Research Found. v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 775 (1987). In conducting this inherently fact-bound analysis, we have taken account of the "totality of the circumstances," including any potential prejudice to the non-moving party. *Id.* at 774, 777. Consequently, we have established few bright-line rules in this area.

In *Khan* we held "irrespective of other indicators of involvement in litigation, filing a motion for summary

---

[*] The parties dispute the occurrence and import of certain extra-record discussions described by Auffenberg's counsel at a hearing in the district court on March 16, 2010. Auffenberg's unsupported allegations he sought arbitration "early and often" are unpersuasive and irrelevant in any event, *see infra* at 7.

judgment ... is inconsistent with preserving the right to compel arbitration." 521 F.3d at 428. Prejudice to the party opposing a stay, which may be treated as a function of the litigation conduct of the party seeking the stay, is "a relevant factor" in our analysis. *See, e.g.*, *Cancer Research*, 821 F.2d at 777 (holding party's motion for summary judgment had prejudiced non-moving party, which was "forced to litigate the substantive issues in the case"). We have only once addressed the question of "waiver" in a case where the party seeking a stay had not moved for summary judgment, and there we did not purport to prescribe a standard for general application. *See Cornell & Co.*, 360 F.2d at 513 (affirming denial of stay where movant had sought to transfer venue, answered the complaint, filed a counterclaim, taken a deposition, and obtained discovery because "[t]he litigation machinery had been substantially invoked").

Our reluctance thus far to define the standard further has imposed a cost upon both litigants and the district court. The waste of resources occasioned by this lawsuit, for one, might have been avoided had we been more clear about the standard we would have the district court apply. This is our effort to fill that gap.

First, to be technically correct as well as clear, we note forfeiture, not waiver, is the appropriate standard for evaluating a late-filed motion under Section 3 of the FAA. Forfeiture is the "failure to make a timely assertion of a right" and, unlike waiver, entails no element of intent. *Olano*, 507 U.S. at 733. A party who fails timely to invoke his right to arbitrate is "necessarily 'in default'" when he later attempts to proceed with arbitration under Section 3. *See Cornell & Co.*, 360 F.2d at 513-14 (emphasizing congressional intent to prevent "dilatoriness and delay"); *see also Moses H. Cone*

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983) (identifying both waiver and delay as "defense[s] to arbitrability" under the FAA, 9 U.S.C. § 2).

Second, to clarify what we mean by "timely," we expand upon the suggestion of the district court: A defendant seeking a stay pending arbitration under Section 3 who has not invoked the right to arbitrate on the record at the first available opportunity, typically in filing his first responsive pleading or motion to dismiss, has presumptively forfeited that right. *See* Fed. R. Civ. P. 8(c) (enumerating affirmative defenses defendant must raise in answer or else forfeit). A defendant who delays seeking a stay pending arbitration until after his first available opportunity might still prevail on a later stay motion provided his delay did not prejudice his opponent or the court. *See Cancer Research*, 821 F.2d at 776 (considering but rejecting defendant's argument that intervening decision by Supreme Court excused its earlier failure to invoke arbitration); *cf. FEC v. Legi-Tech, Inc.*, 75 F.3d 704 (D.C. Cir. 1996) (district court did not abuse discretion permitting defendant to amend answer to include separation-of-powers defense after intervening decision of court of appeals where there was no prejudice to the FEC).

In this appeal, we affirm the district court's denial of the stay because Auffenberg failed to make a timely assertion of his right to arbitrate, and his litigation activity after he filed his initial answer and counterclaim imposed substantial costs upon Zuckerman and the district court. That Auffenberg failed to invoke arbitration in (or before filing) his original answer is undisputed. Assuming for the sake of his argument that Auffenberg "told Zuckerman early and often" of his intention to arbitrate, that representation is nowhere documented in the record. In his pre-trial huffery and puffery

a party may float all sorts of intentions, serious or not; a court considering a question of forfeiture is properly concerned only with intentions placed upon the record.

For similar reasons we reject Auffenberg's belated attempt to distinguish his "arbitrable" claim regarding fees, which he says he did not attempt to litigate, from his "non-arbitrable" claim regarding third-party communications, which he says was the only subject to which his litigation conduct after filing his answer was addressed. *See Cancer Research*, 821 F.2d at 775 (conduct of discovery pertaining only to non-arbitrable claims would not by itself indicate forfeiture of right to arbitration of arbitrable claims). Nothing in Auffenberg's filings prior to his motion to stay indicated to Zuckerman or to the district court that Auffenberg was pursuing in the court only his malpractice claims, or that he was asking the district court to stay only the fee dispute pending arbitration. On the contrary, Auffenberg petitioned the ACAB to arbitrate the malpractice claims he now calls "non-arbitrable." Auffenberg therefore has forfeited any argument that he litigated only his non-arbitrable claims.

Auffenberg might have overcome the presumption of having forfeit his right to a stay had his conduct in litigation after the first responsive pleading imposed no or little cost upon opposing counsel and the courts. In this vein, Auffenberg argues he made only "reactive defensive efforts" that could not have prejudiced Zuckerman. Auffenberg's participation in discovery and mediation, however, combined with his months-long delay before petitioning the ACAB, unquestionably prejudiced Zuckerman, which reasonably enough had commenced an internal investigation, responded to and filed discovery requests, and begun preparing for depositions, all of which activity related to Auffenberg's

arbitrable as well as non-arbitrable claims. Auffenberg's filings, including the repeated amendment of his answer and counterclaims to cure the defects Zuckerman identified, also drew upon inherently limited judicial resources, including the time of both the district court and the Magistrate Judge.

Although delay alone "rarely" constitutes prejudice, *Cancer Research*, 821 F.2d at 777, Auffenberg's purportedly "reactive" litigation activity induced Zuckerman and the district court to expend time and effort on disputes, the resolution of which would not equally advance the future resolution of Auffenberg's claims in arbitration. These costs would have been avoided had he filed his petition to arbitrate and corresponding motion for a stay eight months earlier, when he first answered the complaint and filed his notice of removal. A rebuttable presumption of forfeiture will realign litigants' incentives consistent with the FAA, with benefits in the form of savings inuring to all.

## III. Conclusion

By this opinion we alert the bar in this Circuit that failure to invoke arbitration at the first available opportunity will presumptively extinguish a client's ability later to opt for arbitration. Accordingly, the order of the district court is

*Affirmed.*